Phil Deschamps
Marinship Way Testa Street
Mailing Address:
150, Harbor Drive, Sausalito, CA 94965-9999, General Delivery, Sausalito Post Office
415-425-7996

UNITED STATES COURT

DISTRICT OF NORTHERN CALIFORNIA

Phillip Deschamps

    Plaintiff,

vs.

City of Sausalito, et al.

    Defendant

Case No.: 22-cv-00928-EMC

DECLARATION OF PHIL DESCHAMPS IN SUPPORT OF FIRST AMENDED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

Type body of pleading here.

Dated this day of Month, year.

_____
Attorney Name

I Phil Deschamps, do declare

1. I am a resident of the encampment at Marinship Encampment and am a life long resident of Marin County. I have been living in the tents because the Richardson Bay Regional Agency destroyed my skiffs that allow me to go to my boat home that is anchored out in Richardson Bay which has isolated me on shore.

2. In the first week of February Urban Alchemy was telling me they would give me a ride to another homeless encampment or a vague unspecified "sober living environment".

3. Urban Alchemy told me that they would drop me off at another encampment where I would have no tent, or way to bring an of my personal belongings in a different town. However, I was not going to abandon my

DECLARATION OF PHIL DESCHAMPS IN SUPPORT OF FIRST AMENDED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

home and be alienated to a place I had never been to before. They gave me a girl named Kellys, because I refused to go to another camp. So they gave me a platform but not tent.

4. On February 8th they set up the REI tent for me on the platform. They said there were three days left until the mass eviction on from contaminated side of the field. I was slowly moving in from my former campsite on the parking lot. I was all ready to go for the 11th.

5. On February 10th, as a result of a fire and explosion that occurred to the camp right next to me. The city cordoned off my tent because it had become part of a crime scene. I was not allowed to move into, or grab my belonging from the tent. I was assisting with their investigation with the firefighters and police. I kept asking officials "where do I go?" but no one would tell me where to go. Nobody would give me answer, not Urban Alchemy or the police. The police wouldn't let me go into my own tent because it was part of a crime scene. At 3am they were just telling me to put all of my stuff in the middle of the tennis court.

6. On February 11th, the city forced me to move all of my possessions from the concrete outside of the tennis courts away from the parking lot. Urban Alchemy Supervisor Anthony said that he had talked to the city that they would let me come into my camp. But then an officer immediately recanted that and told me to just put my belongings at the front of the tennis courts.

7. I asked the police "do you want me to sit on a stool all day, in the sun, next to my stuff?" and they had no answer. I asked them if I could have a spot to go or any direction as if my whole being was illegal. My whole life was right there where anyone could steal.

8. So I took matters into may own hands and put my belongings into one corner of the camp. They threw out my cat carrier and my litter box. I had to pull out two of my generators that I had to pull out of the dumpster during the eviction. They ended up just taking one because I had nowhere to put it and the police department took and I don't know what they did with it. They basically stole the generator.

9. I had to put my cat into a friends tent during all of this commotion. One of my other was missing. It was pandemonium and no one gave me any options. They were throwing away my stuff and not giving me a place to go. And my cats were scared and upset during this process.

DECLARATION OF PHIL DESCHAMPS IN SUPPORT OF FIRST AMENDED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

10. I could only find a space in the far north east corner of the camp and I started setting up camp since I had no alternative. I am trying to establish myself and I'm working on my online store.

11. I was there, then that evening on February 13th I was finally given a tent that was still insufficient for the safety of my cats. I went from a situation from where my cats were safe, to an environment to where they would not be safe.

12. After I witnessed Urban Alchemy employee named Troy beat up resident Arthur Bruce. Troy threatened me for reporting the battery to the police. I felt like they were suddenly giving me a tent because I was a witness to the battery and they wanted me to be quite.

13. At no time did the City provide me with their "rules of conduct" as set forth in Gregory's declaration. The city's response was the first time I saw that code of conduct, and I have never agreed to it. Nor did anyone approach me to offer me a replacement tent for the one destroyed in the fire.

14. On February 13th Urban Alchemy workers started taking photos. I was a witness to Urban Alchemy employee beating and seriously injuring Arthur Bruce, and I spoke to the press about it, so I believed it to be retaliation. While I was trying to give a statement to a police officer about the assault, and the police officer Smgalski told me I could enter my platform in the "crime scene" in my designated area and at this point I feel like he is trying to deflect my witness testimony of the battery. Within a couple of hours, I moved all of my belongings there based on what Officer Smgalski had permitted me to do. .

15. The tent the City of Sausalito had provided me was in no way adequate to safely my house my two cats because they could escape, there was insufficient room, and I still had not cat carrier which the City had thrown away, so I had to make a modification creating a "kitty corner" in the back where my cats would have a fenced in area to be in. At this point, I was already missing one my cats because of a direct result of the City throwing away my cat carrier, not giving me a place to go, and not responding to any of the needs of me and my pets after destroying the structure I had had in the parking lot where the cats was perfectly adequate for the cats.

DECLARATION OF PHIL DESCHAMPS IN SUPPORT OF FIRST AMENDED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

16. On February 14th Lieutenant Stacey Gregory approached me and my structure. She said that my structure would be torn down. She said would have to live in a "cat carrier" a tiny box with holes in it that was cruel living situation for my cats.

17. On February 15th I filed my initial complaint and TRO.

18. On February 16th I made a good faith compromise with Urban Alchemy and a male police officer, I believe Corporal Brian Mathers to have a fenced in area so long as I took an REI tent. In this way, I could incorporate the space behind the platform for my kitty corner. In good faith, I agreed to the compromise.

19. On February 17th, they tore down Tom's structure, but because I had the ex parte TRO in the court – I believe they did not destroy mine. I observed them as they destroyed his structure, but no one came up to me and asked me what the status of my structure was. Finally a guy came by and said we could make a compromise where we have a small fenced off area for my cats which I needed so my cats could have a place to go outside to use the bathroom and also not get scared or frightened in a way that would lead them to getting lost. In alternative, I would take an REI camp. So the agreement was that I removed some of the scaffolding took down the structure and the tent.

20. On February 19th the REI tent was not working out with the city issued tent. I explained to Urban Alchemy that the tent was not acceptable for two cats. The cats put big holes in the screens. Nobody would address my issues because now that cats were no longer in a safe environment.

21. Since no one was speaking to me or addressing my concerns, that the cats could now escape and be in harms way, with no written rules stating otherwise, and no apparent legitimate reason to not have a suitable tent for my cats, I had to buy a new tent for $285. The tent fitted on the pallet and did not take anymore square footage than before with the REI tent since it was within the parameters of the platform. I was able to carefully incorporate the new tent with the fencing we had agreed upon in such a way that the cats wouldn't be able to escape. No one contested or gave me issues about my tent or arrangement. I was told by Urban Alchemy that if the tent was not working out that we could get a new tent as long as it was within the boundaries of the platform.

DECLARATION OF PHIL DESCHAMPS IN SUPPORT OF FIRST AMENDED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

22. On February 22nd Judge Chen dismissed my complaint with leave to amend

23. On February 28th I set up my solar panel array on my scaffolding so that I can charge my phone. There is no place to charge except an solar array on a cart that a community member donated to the camp.

24. On March 2nd, Lieutenant Gregory was walking around with someone official that seemed to be high ranking. She seemed to be putting on a show for this individual. She told me in conspicuous manner, that I could not have the structure up. That was the first time anyone had said anything about my new tent. Furthermore Gregory and had never said anything about in passing. There is not a single place to donate

25. To reiterate the issues brought up, Gregory's threatens disturbed me because it could lead to irreparable harm and death of my cats. Not have a fenced area could lead to them going astray, getting eaten by coyotes. I have heard and seen coyotes around the camp. Also my cats might get spooked and walk into a street where they could get run over by a car.

26. My cats shown in Exhibit A are very important to me and they have just gotten accustomed to living in the tent and having the back yard where they can use the litter box.

27. Also my domicile shown in Exhibit C essentially conforms and is equivalent to other campsites. My campsite is 11x14 feet, which is smaller than the foot prints of other campsites shown.

28. My neighbor Collin, in D2, has a campsite that sprawls 12x17 feet with assorted stuff and has had little harassment from the police.

29. Campsites in D1 sprawls out about approximately 20x18 feet with tables, seats, and other accoutrements. They are not being threatened.

30. Campsite D4 -D9 all have equivalent or greater square footage than my own campsite. Rather the issue the city has stated is the scaffolding I use for my solar array and the larger tent I have to accommodate my cats.

31. Indeed, my campsite is one of the neater and certainly not the largest campsite in the entire encampment. The sole issue they have is with that I do not have on of their deficient REI tents, and that I have scaffolding that holds up a solar array, and I have a fenced in area for my kittens. These are all reasonable

DECLARATION OF PHIL DESCHAMPS IN SUPPORT OF FIRST AMENDED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

additions to my campsite that allow me to maintain my health and wellbeing, access to gainful employment and a charged phone – all essentials to my livelihood.

32. Now at this time, based on the threats of Lieutenant Stacey Gregory on March 3rd, I am in fear that at any time the City and its agents make come in and destroy my campsite, leading to the irreparable harm or death of my cats, and destruction of my solar array which I depend on for electricity.

33. On March 4th I spoke with the supervisor of Urban Alchemy Anthony that it was his understanding that I was allowed to have my accommodation for my tent. The supervisor went on to say that he was waiting for a response from his own supervisors about what exactly the status of the tent. My impression that we were going to work something out.

34. Now on March 8th, Lieutenant Gregory came by again and said that I had to immediately remove the fencing and my tent structure. She said "you know it was tossed out of federal court" to which I replied I had until March 22nd to submit an amended complaint. She said that didn't matter, and that they will be taking down the tent. They still are insisting that my cats live in a box.

35. Based on her statements, and the fact she was with Department of Public Works Supervisor Loren Umbertis who directs laborers during evictions, I believe that my tent will be seized and destroyed as have other pieces of property of the city of Sausalito. I believe this may lead to my cats being irreparably harmed or killed, which will result in me experiencing profound anguish. While I would like time on this complaint, I feel compelled to submit what I have right now as it is.

**Declaration Regarding Exhibits**

36. Exhibits A contains true and correct photos of my cats, their catfood, and litter box

37. Exhibit B contains true and correct photos of my tent, my fenced in kitty corner, and the gate that opens and shuts in to the fenced in area taken on March 3rd.

38. Exhibit C is a true and correct photo of my solar array taken on March 3rd

DECLARATION OF PHIL DESCHAMPS IN SUPPORT OF FIRST AMENDED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

39. Exhibit D contains are true and correct photos of other encampment that take up more or equal amounts of space as my encampment taken on March 3rd

40. Exhibit E is a true and correct photo of the current state of emergency declared a the encampment by the city of Sausalito.

I swear under penalty of perjury that the foregoing is a true and correct statement. I have full knowledge of what is in this declaration, and if called to testify could and would competently do so.

Signed _____

Executed On 03/08/2022

DECLARATION OF PHIL DESCHAMPS IN SUPPORT OF FIRST AMENDED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION