Phil Deschamps
Marinship Way Testa Street
Mailing Address:
150, Harbor Drive, Sausalito, CA 94965-9999, General Delivery, Sausalito Post Office
415-425-7996

UNITED STATES DISTRICT COURT

DISTRICT OF NORTHERN CALIFORNIA

| PHIL DESCHAMPS | Case No.: **3:22-cv-00928-VC** |
|---|---|
| Plaintiff, | |
| vs. | |
| SAUSALITO ET AL, | PROPOSED ORDER FOR TRO AND PRELIMAINRY INJUNCITON |
| Defendant | |
| Attorney Name | |

## Introduction

Whereas on March 8th, around 12pm, Lieutenant Gregory of the Sausalito Police Department approached me and told me to tear down tent and subject my cats to unacceptably dangerous conditions as described in the complaint, I am asking the court to immediately enjoin the City of Sausalito from destroying my tent and forcing my cats to live in a small box with holes in it as is the only proposal offered by the city.

## RELIEF SOUGHT

Pursuant to Local Rule 65.1(a) plaintiffs move for a temporary restraining order against Defendants and each of them to halt the expulsion of homeless persons from Steamer Landing Park, where approximately 25 people have been camping for the past

PROPOSED ORDER FOR TRO AND PRELIMAINRY INJUNCITON - 1

many months. Specifically, plaintiffs seek a Temporary Restraining Order and Preliminary Injunction against the Defendants criminalization of homelessness pursuant to Petaluma Municipal Code 13.28.010 and the misapplication of Penal Code 602 (h); " through (o) and Penal Code 647(e), and thereby preventing Defendants from removing Plaintiffs and all similarly situated persons, from Steamer Landing Park and other homeless encampments and essentially prohibiting them from camping anywhere in the City of Petaluma.

A TRO is necessary to prevent the irreparable harm to homeless Plaintiffs, prior to this Court having the opportunity to make a decision on Plaintiffs motion for preliminary injunction.

On October 2nd, 2021 officials of the City went to Steamer Landing and distributed handbills with excerpts from the above code sections and caused great consternation and fear in the camp.

As of October 5th, the City could at any time come into the camp, force residents into unsafe shelters where they will be exposed to COVID-19, violence, loss of privacy, and deterioration of their mental and physical wellbeing.

**Standard of Review**

In considering an application for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, courts in the Ninth Circuit look to the following factors: a) The movant has shown a likelihood of success on the merits; b) there is a likelihood that the movant will suffer irreparable harm in absence of a preliminary injunction c) the balance of equities tip in the movants favor; d) The injunction is in the public interest. *Stormance inc v. Selecky,* 586 F.3d

PROPOSED ORDER FOR TRO AND PRELIMAINRY INJUNCITON - 2

1109, 1127 (9th Cir. 2009). Also see *Idaho v Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir, 2015) quing from *Pom Wonderful LLC v Hubbard*, 775 F.3d 1118,1124 (9th Cir.2014)

Under the sliding scale approach adopted by the Ninth Circuit in Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, Courts must weigh these factors using a "sliding scale" approach such that where there are "serious question going on the merits" a preliminary injunction may still be issued so long as "the balance of hardships tips sharply in the plaintiffs favor and the other two factors are satisfied" *Short v Brown*, 893 F.3d 671,675 (9th Cir.2018)(quoting *Alliance for the Wild Rockies v Cottrell*, 632 F.3d 1127, 1135 (9th Cur.2011) To determine whether to issue a TRO, the courts in the Ninth Circuit apply the same analysis used to evaluate a motion for preliminary injunction *McCarthy v Servis One, Inc.* 2017 U.S. Dist. LEXIS 32622 at 9-10(N.D. Cal. Mar. 7 2017)

Here, Plaintiffs *Ex Parte* Application for a Temporary Restraining Order and Preliminary Injunction, raises serious questions including the legality, under the Federal and California State Constitutions of Defendants plan to destroy Phil Deschamps campsite and

### Irreparable Harm

The Plaintiffs and other residents of the camp will suffer irreparable harm if they are made to move their homes on October 6th. They will have nowhere to go and will have to wander around Petaluma in order to find a new place to put up their tents. This will expose them to parts of the community potentially infected with COVID-19, whereas the current camp has been a shelter from the wider community and has not had a COVID-19 infection run through it.

PROPOSED ORDER FOR TRO AND PRELIMAINRY INJUNCITON - 3

**Violation of Robert T. Stafford Disaster Relief and Emergency Assistance Act 42 U.S.C. §§ 5121-5207**

On February 10th, the Sausalito City Council approved the "Proclamation of A Local Emergency By Director of Emergency Services" attached in Exhibit E.

Whereas local emergencies are in part governed by the Robert T Stafford Disaster Relief and Emergency Assistance Act, and that act and federal guidance states during states of emergency accommodations must be made for pets in section 42 U.S.C. §§ 5121-5207

Therefore, the city by depriving me of my rights as someone who is a victim of a state of emergency as declared in that proclamation.

### State-Created Danger

In addition, serious questions arise regarding **state-created danger by way of increasing of irreparable harm and possible death of my cats which will cause me extreme emotional anguish.**

While most courts have held that there may be no fundamental right to housing, the Ninth Circuit recognizes liability under substantive due process where a state or local official act to place a person in a situation of known danger with deliberate indifference to their personal or physical safety *Kennedy v City of Ridgefield.* 439 E 3d 1055 (9th Cit. 2006) "[D]elibrate indifference is astringent standard of fault, requiring proof that a municipal actor disregard a known or obvious consequence" *Board of County Com'rs of Bryan County, Okl v Brown,* 520 U.S. 397

PROPOSED ORDER FOR TRO AND PRELIMAINRY INJUNCITON - 4

"In examining whether [the city' affirmatively places an individual in danger, a court does not look solely to the agency of the individual, nor does it rest its opinion on what options may or may not have been available to the individual. Instead, [the court must] examine whether [the city] left the person in a situation that was more dangerous than the one in which they found him" *Kennedy,* 439, F3d at 1062 (citations omitted) See also, Northern District Judge Susan va Keulen's Order January 20, 2021 granting Plaintiffs Ex Parte Application for Preliminary Injunction in the case of *Santa Cruz Homeless Union et al v Martin Bernal, City of Santa Cruz et al Case No. 20-cv-09425-SVK*

While generally cats are considered as chattel, they are still living beings and are entitled to some dignity and respect as has is held in many laws preventing cruelty to animals. By putting my cats in danger, it also put me at risk of severe emotional anguish if they perish as a result of the cities actions. State created danger doctrine applies.

**Balance of Equities**

The balance of equities tips sharply in the favor of the Plaintiffs. In a similar case outcome for the recent decision in *Where Do We Go Berkeley v. California Department of Transportation (Caltrans)* the Northern District of California's Judge Chen granted a TRO and then granted in part the Plaintiff's preliminary injunction for six months. The order stopped Caltrans from clearing an encampment in Emeryville, and compelled Caltrans to allow some of its property to be accessible for unhoused people to have domiciles.

Here the public interest – which includes the interest of the homeless who it is often forgotten are also members of the public – is clearly served by enjoining enforcement of the upcoming displacement on October 6th

## Prayer For Relief

1. Relief is prayed that the court grant the proposed order for TRO to immediately to enjoin defendants from tearing down my tent, and displacing my cats.
2. That my cats not be forced to live inside of a box.
3. That be permitted to have the area directly behind his platform for a fenced in area for his cats.
4. That the city immediately meet and confer with me to find and equitable solution and stop harassing me with out any form of redress or complaint process for the behavior of their employees.ß