UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP DESCHAMPS,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF SAUSALITO, et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-00928-EMC<br><br>**ORDER RE PLAINTIFF'S AMENDED COMPLAINT AND MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Docket No. 14 |

　　　　Currently pending before the Court is Plaintiff Philip Deschamps's amended complaint and request for a temporary restraining order ("TRO"). A hearing was held on the TRO motion on March 11, 2022.

　　　　Although the Court did not address the amended complaint at the hearing, the Court does so now. The Court has an obligation to review the amended complaint pursuant to 28 U.S.C. § 1915(e)(2). Mr. Deschamps has asserted a number of claims, based on both federal and state law. For example, he claims violation of the federal Stafford Disaster Relief and Emergency Assistance Act. He also asserts federal and state claims for cruel and unusual punishment, state-created danger, unlawful seizure of property, and violation of substantive due process. Although many of the claims seem to be of questionable merit, the Court finds that there may be some viable claims. For instance, Mr. Deschamps has expressly alleged that the City took property from him (a cat carrier, a litter box, and a generator). He also indicates that the City is acting arbitrarily by not allowing him to use certain space adjacent to his specific encampment and or construct certain structures. The Court therefore **ORDERS** that the amended complaint be served on Defendants, with service to be effected by the U.S. Marshals' Office. To be clear, however,

1  this order does not preclude Defendants from challenging claims in, *e.g.*, a 12(b)(6) motion to
2  dismiss.
3        The Court now turns to the motion for a TRO. The standards for a TRO are the same as
4  those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.,*
5  *Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of
6  success on the merits, (2) a likelihood of irreparable harm that will result if an injunction is not
7  issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public
8  interest. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth
9  Circuit has clarified that its "سliding scale" approach to preliminary injunctive relief is still viable.
10 That is, if the plaintiff can demonstrate the risk of irreparable injury, under the sliding scale test,
11 the strength of the plaintiff's showing on the merits necessary to secure a preliminary injunction
12 varies with the degree to which the balance of hardship tips in its favor. In other words,
13 preliminary injunctive relief "'is appropriate when a plaintiff demonstrates . . . that serious
14 questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's
15 favor.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).
16       Taking into account the above factors, the Court finds that Mr. Deschamps has a fair legal
17 position that the City is arbitrarily preventing him from using his own tent. It appears that his tent
18 fits within the designated platform and there is no indication that the tent poses a health or safety
19 hazard. Although there may be some room to debate whether Mr. Deschamps would suffer
20 irreparable harm if he were not allowed to use his own tent (he takes the position that the City-
21 issued tent is not sturdy enough to keep his cats inside), the City has not pressed this issue.
22 Moreover, the balance of equities weighs in Mr. Deschamps's favor – *i.e.*, he arguably would
23 suffer irreparable injury without the use of his own tent and there is no indication that the City or
24 the people at the encampment would be harmed if he were allowed to do so. Finally, the Court
25 notes that, if Mr. Deschamps is allowed to use his own tent, then there is less of a need (at least for
26 TRO purposes) for him to maintain the structure at issue.
27       Accordingly, the Court grants Mr. Deschamps' request for a TRO in part. Specifically,
28 Mr. Deschamps is allowed to use his own tent on the platform, and Defendants and others acting

United States District Court
Northern District of California

in concert with them are enjoined from taking down his tent, evicting him from the encampment based on his use of his own tent, and/or penalizing him for using his own tent. This TRO shall last until March 24, 2022 (which is when the Court is holding a continued hearing on the TRO request).

The Court, however, shall not at this time grant Mr. Deschamps any relief with respect to the ancillary structure. The structure at issue has already been taken down. Mr. Deschamps's need for the structure, at least for a brief period, has been minimized by (1) the Court's order allowing him to use his own tent and (2) the City's representation that it will provide a portable charging station for people at the encampment to use (thus obviating Mr. Deschamps's need for solar panels. That being said, the Court does enjoin Defendants and others acting in concert with them from disposing of the property that Mr. Deschamps had kept within or under the structure. Mr. Deschamps shall be given a reasonable amount of time to move his property to his tent/platform. Mr. Deschamps is not allowed to use this time to "add" to the property that he has accumulated.

The TRO is issued to afford the parties an opportunity to work with Judge Illman in a settlement conference scheduled for March 21, 2022. The Court urges the parties to find a viable accommodation of Mr. Deschamps's interest in maintaining his cats and belongings and the City's interest in preserving the health and safety of all residents in the encampment.

This order disposes of Docket No. 14.

**IT IS SO ORDERED**.

Dated: March 11, 2022

_____
EDWARD M. CHEN
United States District Judge